FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 30, 2018

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MICHAEL C., <br>      Plaintiff, <br><br>    vs. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br>      Defendant. | No. 1:17-cv-03147-MKD <br><br> ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT <br><br> ECF Nos. 17, 22 |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 17, 22. The parties consented to proceed before a magistrate judge. ECF No. 7. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court grants Plaintiff's Motion, ECF No. 17, and denies Defendant's Motion, ECF No. 22.

ORDER - 1

**JURISDICTION**

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an

ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial

ORDER - 3

gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work

activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. § 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is

ORDER - 5

capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On October 30, 2013, Plaintiff applied for Title XVI supplemental security income benefits alleging a disability onset date of January 1, 2009.  Tr. 201-06. The applications were denied initially, Tr. 116-24, and on reconsideration, Tr. 125-30.  Plaintiff appeared at a hearing before an administrative law judge (ALJ) on February 12, 2016, Tr. 36-48, and on July 21, 2016, Tr. 49-82.  On July 28, 2016, the ALJ denied Plaintiff's claim.  Tr. 20-30.

At step one of the sequential evaluation process, the ALJ found Plaintiff has not engaged in substantial gainful activity since the application filing date, October 30, 2013.  Tr. 22.  At step two, the ALJ found that Plaintiff has the following severe impairments:  cervical degenerative disc disease; coronary artery disease and status post coronary infarction (heart attack); hepatitis C; bipolar disorder II; and social phobia.  Tr. 22.

At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  Tr. 23.  The ALJ then concluded that Plaintiff has the RFC to perform light work with the following limitations:

ORDER - 6

He can never climb ladders, ropes or scaffolds. He can occasionally climb ramps and stairs. He can occasionally kneel and crouch. He can occasionally stoop and crawl. He is limited to occasional reaching at overhead height. He is limited to occasional exposure to vibration and pulmonary irritants such as dust, fumes, odors, gases and poor ventilation. He is limited to occasional exposure to workplace hazards such as proximity to unprotected heights and moving machinery. He is able to adapt to a predictable work routine with no more than occasional changes in terms of assigned tasks and the procedures for accomplishing those tasks. He is limited to occasional and superficial public interaction.

Tr. 25.

At step four, the ALJ found Plaintiff has no past relevant work. Tr. 28. At step five, the ALJ found, considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff could perform, such as, cleaner/housekeeper, electrical assembler, and small-products assembler. Tr. 28-29. Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, since the filing date of the application, October 30, 2013. Tr. 29-30.

On July 3, 2017, the Appeals Council denied review of the ALJ's decision, Tr. 1-5, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

ORDER - 7

# ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him supplemental security income benefits under Title XVI of the Social Security Act. Plaintiff raises the following issues for review:

1. Whether the ALJ properly incorporated the opined limitations into the RFC; and

2. Whether the ALJ properly evaluated Plaintiff's symptom claims.

ECF No. 17 at 5, 10, 12.

# DISCUSSION

## A. RFC

Plaintiff contends the RFC failed to account for his mental and physical limitations. ECF No.17 at 5, 12.

At step four of the sequential evaluation, the ALJ must determine the claimant's RFC. 20 C.F.R. § 416.920(a)(4)(iv). "[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015). "[A]n ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony." *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). To the extent the evidence could be interpreted differently, it is the role

ORDER - 8

of the ALJ to resolve conflicts and ambiguity in the evidence. *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 599-600 (9th Cir. 1999).

    *1. Mental-Impairment Limitations*

      a. Patricia Kraft, Ph.D.

On May 15, 2014, Dr. Kraft reviewed the medical evidence of record. Tr. 100-02 (listing records reviewed). Dr. Kraft diagnosed Plaintiff with affective disorder and anxiety disorder. Tr. 102-03. Dr. Kraft opined that Plaintiff's affective and anxiety disorders would mildly restrict Plaintiff's activities of daily living and moderately restrict his abilities to:

- maintain attention and concentration for extended periods of time;
- complete a normal workday and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods;
- respond appropriately to changes in the work setting; and
- interact appropriately with the public.

Tr. 107-08. As to Plaintiff's sustained concentration, pace, and persistence limitations, Dr. Kraft stated:

> No significant cognitive limits noted in testing & overall has GED [with reports] of leaving jobs largely related to being bored; some indication of tangential [thought process] on recent [psychological]

ORDER - 9

exam.  Overall can complete [simple, repetitive[1] tasks] & most detailed tasks [with occasional] wane in [attention] & concentration [due to psychological symptoms] of anxiety & depression.

Tr. 108 (spelling out abbreviations used in original).  As to Plaintiff's adaptation limitations, Dr. Kraft stated, "[due to psychological symptoms Plaintiff] would do best [within] a predicable work environment."  *Id*. (spelling out abbreviations used in original).

The ALJ gave significant weight to Dr. Kraft's opinion and determined that Plaintiff had moderate difficulties in regard to concentration, persistence, and pace. Tr. 24, 27.  In regard to Plaintiff's mental-health limitations, the ALJ's RFC stated: "[Plaintiff] is able to adapt to a predictable work routine with no more than occasional changes in terms of assigned tasks and the procedures for accomplishing those tasks.  He is limited to occasional and superficial public interaction."  Tr. 25.

Plaintiff contends the ALJ failed to fully incorporate three of Dr. Kraft's mental-functional assessments in the RFC—the first three listed above:  1) concentration/attention, 2) workday/workweek pace and persistence, and 3) work-

---

[1] It is unclear whether Dr. Kraft intended "simple, routine tasks" or "simple, repetitive tasks."  However, whether Dr. Kraft meant routine or repetitive tasks is immaterial to the outcome of this matter.

setting changes/predictable work environment.  ECF No. 17 at 6-7 (citing Tr. 27).

Addressing the latter first, Plaintiff argues the ALJ failed to incorporate Dr. Kraft's

opinion that Plaintiff was moderately limited in his ability to respond appropriately

to changes in the work setting, requiring him to have a predictable work

environment.  ECF No. 17 at 7 (citing Tr. 25).  An RFC finding need not be

identical to a medical opinion; rather, it must be consistent with the medical

opinion.  *Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1222-23 (9th Cir.

2010).  Here, the RFC is consistent with Dr. Kraft's opinion in this regard:

"[Plaintiff] is able to adapt to a predictable work routine with no more than

occasional changes in terms of assigned tasks and the procedures for

accomplishing those tasks."  Tr. 25.  The ALJ sufficiently incorporated Dr. Kraft's

opinion about Plaintiff's work-change limitations into the RFC.

     As to the other functional limitations—concentration/attention and

workday/workweek pace and persistence, Dr. Kraft opined that these limitations

were due to Plaintiff's anxiety and depression.  Tr. 107-08.  Because the ALJ gave

great weight to Dr. Kraft's opinion, these concentration, pace, and persistence

limitations were to be incorporated into the RFC.  *See Lester v. Chater*, 81 F.3d

821, 830-31 (9th Cir. 1995).  The Commissioner argues the ALJ incorporated these

limitations into the RFC, as the RFC limits Plaintiff to unskilled work, which the

Commissioner submits inherently requires little judgment and can be learned in a short period of time. ECF No. 22 at 4.

Here, in assessing the medical opinions, the ALJ failed to discuss and explain how the moderate limitations in concentration and workday/workweek pace and persistence were incorporated into the RFC. Tr. 27. It is not apparent to the Court that the ALJ considered and incorporated such limitations. Instead, it appears that the RFC solely addressed Plaintiff's limitations in regard to work routine and public interaction: "He is able to adapt to a predictable work routine with no more than occasional changes in terms of assigned tasks and the procedures for accomplishing those tasks. He is limited to occasional and superficial public interaction." Tr. 25; *see also* Tr. 27. Work-routine adaptability and public interaction are different abilities than concentration and workday/workweek pace and persistence. The ALJ was required to include all of Plaintiff's "functional limitations, both physical and mental" in the hypothetical question posed to the vocational expert." *Flores v. Shalala*, 49 F.3d 562, 570 (9th Cir. 1995). *See also Kasarsky v. Barnhart*, 335 F.3d 539, 543-44 (7th Cir. 2003) ("Employers are entitled to demand that their employees stick with the job, once they have been trained to do it; the length of time it takes someone with borderline intelligence to learn a job is not the same as the ability of that person to perform consistently once trained."); *Calloway v. Berryhill*, No. 2:17-cv-00151-TLF, 2017

WL 3700798, at *3 (W.D. Wash. Aug. 25, 2017) (unpublished opinion) (finding

the RFC assessment failed to incorporate the psychologist's opinion that although

plaintiff could perform simple routine tasks and more complex tasks, her

concentration, persistence, or pace may wax and wane); *Tucker v. Colvin*, No. 14-

08146AG(RAO), 2015 WL 7737300, at *2 (C.D. Cal. Nov. 30, 2015) (unpublished

opinion) (finding that the ALJ erred by failing to include the plaintiff's moderate

deficiencies of concentration, persistence, or pace in the RFC; plaintiff's attention-

limitation was not covered by the following RFC limitation: "perform no more

than simple, repetitive tasks; perform no jobs requiring any contact with the public

or more than occasional interactions with co-workers and supervisors") (citing

similar cases).  Because the ALJ accepted Dr. Kraft's opinion that Plaintiff has

moderate difficulties with concertation and workday/workweek pace and

persistence, the ALJ was required to pose some form of these limitations to the

vocational expert.  *See Brink v. Comm'r Soc. Sec.* Admin, 343 F.3d App'x 211, *1

(9th Cir. 2009) ("The hypothetical question to the vocational expert should have

included not only the limitation to 'simple, repetitive work,' but also [the

claimant's] moderate limitations in concentration, persistence, or pace.").  Here,

because the ALJ failed to explain how these limitations were incorporated into the

RFC—and it is not apparent to the Court that these limitations were incorporated

into the RFC absent such an explanation, the ALJ erred.  *See id.*; *Stubbs-*

*Danielson*, 539 F.3d at 1174 (requiring RFC to capture medically supported restrictions related to concentration, persistence, or pace).

This error was not harmless. An ALJ's error is harmless where such error is inconsequential to the ultimate non-disability determination. *See Stout v. Comm'r of Soc. Sec.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *Burch v. Barnhart,* 400 F.3d 676, 679 (9th Cir. 2005) ("A decision of the ALJ will not be reversed for errors that are harmless."). The error was consequential because a worker must be able to maintain sufficient concentration and persist in their work. Specifically, a worker must be able to "maintain concentration and attention for extended periods (the approximately two-hour segments between arrival and first break, lunch, second break, and departure)." Social Security Program Operations Manual System (POMs) DI 25020.010(B)(2). As a result, if Plaintiff is unable to persist at work without workday or workweek interruptions, he may be deemed unemployable, as the vocational expert testified that an employer will not tolerate a person missing more than five days of work per year. Tr. 78. Here, the Court is unable to determine whether an RFC incorporating any additional limitations, combined with Plaintiff's other limitations, would result in the inability to perform any work in the national economy. Therefore, the ALJ's RFC failure is not inconsequential. *Cf. Molina,* 674 F.3d at 1115 (finding an error to be harmless if it is "inconsequential to the [ALJ's] ultimate nondisability determination.").

1    Yet, the Commissioner argues any error in incorporating Dr. Kraft's opinion

2  about Plaintiff's concentration and workday/workweek pace and persistence

3  limitations is harmless because Plaintiff was found to be not disabled on the

4  Disability Determination Reconsideration form.  ECF No. 22 at 6 (citing Tr. 110).

5  However, the Court is reviewing the ALJ's disability decision and, as discussed

6  above, it was the ALJ's responsibility to determine Plaintiff's RFC and disability

7  status.  *See* S.S.R. 96-5p at *2.  When assessing Plaintiff's RFC, the ALJ was

8  required to capture all of Plaintiff's limitations related to concentration,

9  persistence, and pace identified in the medical testimony.  *See Stubbs-Danielson*,

10  539 F.3d at 1174.  By failing to pose a complete hypothetical to the vocational

11  expert and failing to discuss whether Dr. Kraft's opined functional limitations as to

12  Plaintiff's concentration and workday/workweek pace and persistence were

13  incorporated into the RFC, the ALJ committed harmful legal error, requiring

14  remand to the ALJ.  *See Brink*, 343 Fed. App'x 211 at *1-2 (remanding to the ALJ

15  to clarify the RFC and hypothetical posed to the vocational expert to determine

16  whether claimant is able to perform gainful employment in the national economy).

17    Because of this harmful legal error, Plaintiff asks for an immediate award of

18  benefits.  To do so, the Court must find that the record has been fully developed

19  and further administrative proceedings would not be useful.  *Garrison v. Colvin*,

20  759 F.3d 995, 1019-20 (9th Cir. 2014); *Varney v. Sec'y of Health & Human Servs.*,

ORDER - 15

859 F.2d 1396, 1399 (9th Cir. 1988).  Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a claimant disabled if all the evidence were properly evaluated, remand is appropriate.  *Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

Plaintiff argues that further administrative proceedings are unneeded because, under the Social Security Regulations' definition for the term "occasionally," Dr. Kraft opined that Plaintiff is unable to maintain his concentration for the required two-hour intervals.  ECF No. 23 at 2-3.  Plaintiff relies on the "occasionally" definition in SSR 96-9p.  *Id.*  SSR 96-9p defines "occasionally" as "occurring from very little up to one-third of the time, and would generally total no more than about two hours of an eight-hour workday.  ECF No. 23 at 2 (citing SSR 96-9p).  However, this cited rule defines "occasionally" for purposes of determining whether a physical impairment requires the claimant to perform sedentary work.  *Id.*  There is no indication that Dr. Kraft intended this SSR 96-9p "occasionally" definition to apply to her concentration-limitation opinion.  Moreover, contrary to Plaintiff's position, it is not clear to the Court that Dr. Kraft's comments mean that Plaintiff's occasional wax and wane of symptoms would be of sufficient severity to render Plaintiff unable to have sufficient concentration for unskilled work, given Dr. Kraft's other findings.

Therefore, "there are outstanding issues that must be resolved" before a disability determination can be made. *Garrison*, 759 F.3d at 1019-20. As a result, an immediate award of benefits is not appropriate. On remand, the ALJ is to reconsider Dr. Kraft's opinion in light of the entire record, resolve any conflicts, and then translate that evidence and incorporate it into a RFC that adequately captures all of Plaintiff's restrictions. *See Brink*, 343 Fed. App'x 211, at *1-2.

### b. Roland Dougherty, Ph.D.

At the request of the Social Security Administration, Dr. Dougherty conducted a consultative examination of Plaintiff on December 3, 2013. Tr. 472-78. Dr. Dougherty diagnosed Plaintiff with conditions, including bipolar II mood disorder; depressive phase; social phobia; hypertension; degenerative disc and joint disease; and coronary artery disease. Tr. 477. He opined that Plaintiff could do detailed and complex tasks, accept instructions from supervisors and interact with coworkers and the public, and "should" maintain regular attendance in the workplace with respect to psychiatric disorders, but "may" have difficulty dealing with workplace stress and completing a normal workday/workweek without interruptions from his anxiety and depression/hypomania. Tr. 478.

The ALJ assigned varying weight to Dr. Dougherty's consultative opinion. Tr. 27. First, the ALJ assigned only some weight to Dr. Dougherty's opinion that Plaintiff can complete detailed and complex tasks, accept instructions from

supervisors, and interact with coworkers and the public. *Id.* Second, the ALJ

assigned lesser weight to Dr. Dougherty's opinion that Plaintiff "should be able to

maintain regular attendance in the workplace with respect to psychiatric disorders"

and that Plaintiff "may have difficulty completing a normal workday/workweek

without interruptions from his anxiety and depression/hypomania." *Id.* (quoting

Tr. 478). The ALJ treated these "should" and "may" opinions as equivocal

opinions, unsupported by Dr. Dougherty's findings or the other evidence of record.

*Id.*

Plaintiff claims the "ALJ commit[ed] reversible error by not incorporating

the limitations opined by . . . [Dr.] Dougherty" in the RFC. ECF No. 17 at 5. But

in neither the Motion, ECF No. 17, nor the Reply, ECF No. 23, did Plaintiff

provide analysis supporting this argument. Because Plaintiff failed to support this

issue with analysis, Plaintiff failed to challenge the ALJ's findings as to Dr.

Dougherty. Therefore, any challenge is waived. *See Carmickle v. Comm'r, Soc.*

*Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (determining the court may

decline to address the merits of issues not argued with specificity); *Kim v. Kang*,

154 F.3d 996, 1000 (9th Cir. 1998) (ruling that the court will not consider on

appeal issues that are not argued "with any specificity" in the briefing).

However, because the case is being remanded on other grounds, the ALJ is directed to consider Dr. Dougherty's opinion in the course of considering the medical evidence on remand.

c. DSHS Forms[2]

Plaintiff argues the ALJ failed to consider the "disabled" opinions of the Washington State Department of Social and Health Services (DSHS) examiners. ECF No. 17 at 13-14. The Commissioner concedes the ALJ erred by failing to discuss the DSHS forms. ECF No. 22 at 11 (citing SSR 06-03p). Yet, the Commissioner argues that no harm resulted from this error because these forms do not provide any insight into Plaintiff's ability to function. *Id.* (citing Tr. 285, 424). However, the October 10, 2013 DSHS Medical Disability Decision states that Plaintiff "cannot sustain 40 [hour week due to] current [symptoms of bipolar affective disorder]." Tr. 424 (spelling out abbreviations used in original). Because

_____

[2] Plaintiff included this argument in a section challenging whether the ALJ considered the functionally limiting effects of Plaintiff's physical impairments. ECF No. 17 at 12-13. However, Plaintiff's DSHS-forms argument relates to his mental impairments and therefore is analyzed under this "Mental-Impairment Limitations" section.

ORDER - 19

the case is being remanded on other grounds, the ALJ is directed to consider the

DSHS disability opinions on remand.

2. *Physical-Impairment Limitations*

Plaintiff argues the ALJ erred by failing to consider the functional

limitations of his physical impairments. The ALJ must translate and incorporate

medical findings about Plaintiff's physical impairments into the RFC. *See Rounds*,

807 F.3d at 1006. The ALJ found that Plaintiff's cervical degenerative disc

disease, coronary artery disease and status post coronary infarction, and hepatitis C

were severe impairments. Tr. 22. In regard to Plaintiff's physical-impairment

limitations, the RFC states:

> He can never climb ladders, ropes or scaffolds. He can occasionally
> climb ramps and stairs. He can occasionally kneel and crouch. He
> can occasionally stoop and crawl. He is limited to occasional
> reaching at overhead height. He is limited to occasional exposure to
> vibration and pulmonary irritants such as dust, fumes, odors, gases
> and poor ventilation. He is limited to occasional exposure to
> workplace hazards such as proximity to unprotected heights and
> moving machinery.

Tr. 25.

Plaintiff contends this RFC is legally deficit because the record reflects that

he has knee and back issues that require him to be down for a couple weeks a year.

ECF No. 17 at 13-15. However, it is the role of the ALJ to resolve conflicts and

ambiguity in the evidence. *Morgan*, 169 F.3d at 599-600. If the ALJ's evaluation

and interpretation of the record is rational, the ALJ's conclusion will be upheld.

ORDER - 20

*Burch*, 400 F.3d at 679.  Here, there was conflicting evidence as to Plaintiff's knee and back issues and resulting limitations.  *See, e.g.*, Tr. 541 (June 18, 2010: lumbar spine has tenderness, mild pain with motion); Tr. 293, 561 (August 2010: severe degenerative disc disease with moderate severe spinal stenosis at C4-5, C5-6, and C6-7); Tr. 539 (September 18, 2010: cervical and lumbar spine has tenderness and moderate pain); Tr. 310, 535 (November 20, 2010: no thoracic or lumbar spine tenderness.  Normal mobility and curvature); Tr. 437 (August 21, 2012: cervical spine has tender, mild pain with motion; no thoracic or lumbar spine tenderness, with normal mobility and curvature); Tr. 528 (December 16, 2013: back and knee pain opined as chronic problems); Tr. 514 (March 3, 2015: "[n]ormal gait.  Able to exercise normally"); Tr. 524 (May 15, 201:5 "[n]egative" for "[b]ack pain, muscle weakness and neck pain"); Tr. 570 (June 10, 2016: back pain and osteoarthritis of the knee); Tr. 66 ("My knee's okay.  I can walk around.  I can take out the garbage. . . .  I take my dog to the park.").  The ALJ rationally incorporated the conflicted medical findings about Plaintiff's physical impairments into the RFC.  The Court will not disturb the ALJ's RFC in regard to Plaintiff's physical impairments.  *See Hill*, 698 F.3d at 1158.

**B. Plaintiff's Symptom Claims**

Plaintiff contends the ALJ improperly evaluated his symptom claims. ECF No. 17 at 10-12.

An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms.[3] SSR 16–3p, 2016 WL 1119029, at *2. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted). "The claimant is not required to show that [his] impairment could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

---

[3] At the time of the ALJ's decision in July 2016, the regulation that governed the evaluation of symptom claims was SSR 16-3p, which superseded SSR 96-7p effective March 24, 2016. SSR 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 Fed. Reg. 15776, 15776 (Mar. 24, 2016). The ALJ's decision did not cite SSR 16-3p, but cited SSR 96-4p, which was rescinded effective June 14, 2018 in favor of the more comprehensive SSR 16-3p. Neither party argued any error in this regard.

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id*. (quoting *Lester*, 81 F.3d at 834); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison*, 759 F.3d at 1015 (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of an individual's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to

pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. § 416.929 (c) (1)–(3).  The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

At step one of the analysis, the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms.  Tr. 26.  At step two, the ALJ discounted Plaintiff's claims concerning the intensity, persistence, and limiting effects of the symptoms of the impairments as not consistent with medical evidence and other evidence in the record.  Tr. 26-27.

Here, Plaintiff largely failed to challenge the ALJ's evaluation of his symptom testimony and thus, any challenges are waived and the Court may decline to review them.  *See Carmickle.*, 533 F.3d at 1161 n.2 (9th Cir. 2008) (determining Court may decline to address on the merits issues not argued with specificity); *Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998) (the Court may not consider on appeal issues not "specifically and distinctly argued" in the party's opening brief).

*1. Objective Medical Evidence*

The ALJ found Plaintiff's symptom claims about his physical and mental impairments inconsistent with the medical evidence.  Tr. 26-27.  An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the

ORDER - 24

degree of the symptoms alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). But medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. § 416.929(c)(2).

a. Physical Impairments

As to Plaintiff's cardiac condition, the ALJ found that the medical evidence does not support his claim of disabling limitations. Tr. 26. Specifically, the ALJ noted that Plaintiff's cardiac functioning improved within a year-and-a-half of the stent placement in October 2013. Tr. 26. The objective medical evidence supports the ALJ's finding. *See, e.g.,* Tr. 350, 383, 399, 459, 469; Tr. 395 (noting that post-surgery Plaintiff has "regular [cardiac] rhythm and no murmur" and that he is "currently symptom-free"); Tr. 514 (February 17, 2015: "[n]ormal heart sounds without gallop murmur or extra heart sounds); Tr. 506 (March 18, 2015: imaging and ejection-fraction testing showed normal results).

As to Plaintiff's back and knee conditions, the ALJ found that Plaintiff's symptom claims were inconsistent with the medical evidence. Tr. 27. As discussed above, there was conflicting evidence in the record as to Plaintiff's knee and back issues and any resulting limitations. *See, e.g.*, Tr. 66, 293, 310, 437, 514,

ORDER - 25

524, 535, 539, 541, 561, 570.  The ALJ's decision that Plaintiff's back and knee conditions were not as disabling as Plaintiff claimed is a rational interpretation of the evidence and is supported by substantial evidence.[4] *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) ("[W]hen the evidence is susceptible to more than one rational interpretation," the court upholds the ALJ's decision.).

Though Plaintiff's symptom claims cannot be rejected on the sole ground that they are not fully corroborated by objective medical evidence, the medical evidence was a relevant factor for the ALJ to consider.  Here, the ALJ's decision is supported by substantial evidence and was unchallenged.  *See Carmickle*, 533 F.3d at 1161 n.2.

b.  Mental Impairments

As to Plaintiff's mental impairments, the ALJ noted that Plaintiff's allegations of disabling impairments are inconsistent with the benign examination

_____

[4] The Commissioner argues that Plaintiff waived this argument.  ECF No.  22 at 8.  However, Plaintiff challenged the ALJ's evaluation of the medical evidence.  ECF No.  17 at 12 ("As . . . the medical opinions show that [Plaintiff's] symptoms are supported by the objective evidence alone the ALJ's attack on [Plaintiff's] symptoms is not supported and is [sic] constitutes reversible error.").

ORDER - 26

findings. Tr. 26. First, the ALJ noted that the medical evidence reflects that Plaintiff is alert and orientated. Tr. 26. There is substantial evidence in the record to support the ALJ's finding that the medical records indicated that Plaintiff was alert and orientated during the examinations. *See, e.g.*, Tr. 551 (December 7, 2010: alert and orientated to person, place, and time); Tr. 565 (September 14, 2012: alert and orientated to time, place, and person, with normal mood and affect); Tr. 335, 337 (September 19, 2013: alert and orientated to person, place, and time); Tr. 568 (September 24, 2013: orientated to person, place, and time with normal affect); Tr. 496 (September 3, 2015: orientated to person, place, and time); Tr. 580 (June 29, 2016: alert). Second, the ALJ concluded that Plaintiff's claims of disabling mental health symptoms are inconsistent with the relatively normal examination findings. Tr. 26. In support, the ALJ accurately summarized many of Dr. Dougherty's clinical findings and observations, including that Plaintiff was neatly groomed, appropriately dressed, cooperative, mildly anxious, oriented though frequently tangential and/or circumstantial, aware of current events and the President, and was able to recall three out of three objects after five minutes, recall six digits forward and four digits in reverse, spell "world" correctly forward but not in reverse, follow a basic conversation, adequately interpret traditional proverbs, and easily complete a three-step command. Tr. 26 (citing Tr. 472-76).

### 2. Improvement with Treatment

The ALJ found that Plaintiff's cardiac functioning improved with treatment. Tr. 26. The effectiveness of treatment is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. § 416.929(c)(3) (2011); *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (recognizing that conditions effectively controlled with medication are not disabling for purposes of determining eligibility for benefits); *Tommasetti*, 533 F.3d at 1040 (determining that a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations). The ALJ found that Plaintiff's cardiac functioning improved within a year-and-a-half of the stent placement in October 2013. Tr. 26. The objective medical evidence supports the ALJ's finding. *See, e.g.,* Tr. 350, 383, 399, 459, 469; Tr. 395 (noting that post-surgery Plaintiff has "regular [cardiac] rhythm and no murmur" and that he is "currently symptom-free"); Tr. 514 (February 17, 2015: "[n]ormal heart sounds without gallop murmur or extra heart sounds); Tr. 506 (March 18, 2015: imaging and ejection-fraction testing showed normal results). This was a clear and convincing and unchallenged reason to find Plaintiff's symptom complaints not credible.

### 3. Activities

Next, the ALJ found Plaintiff's symptom claims inconsistent with his activities. Tr. 27. A claimant's reported activities can be evaluated for consistency

ORDER - 28

with reported symptoms. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

"While a claimant need not vegetate in a dark room in order to be eligible for

benefits, the ALJ may discredit a claimant's testimony when the claimant reports

participation in . . . activities that "contradict claims of a totally debilitating

impairment." *Molina*, 674 F.3d at 1112-13 (internal citations omitted).  The ALJ

found that Plaintiff testified that he is in constant, severe pain, primarily from

degenerative disc disease.  Tr. 26.  The ALJ found this inconsistent with his

increased outdoor activities, including bicycling, cleaning out his shed, and

breaking up a dog fight.  Tr. 27.  As to the latter two activities, there is no

supporting evidence in the record that Plaintiff routinely cleans out his shed and

breaks up dog fights—the record reflects that these were one-time activities.  Tr.

61, 71, 572 (cleaning out shed); Tr. 73 (breaking up fight between his dog and the

neighbor's dog).  As to bicycling, there is substantial evidence in the record that

Plaintiff's bicycling is inconsistent with his claim that he is in constant severe pain

from degenerative disc disease.  *See, e.g.*, Tr. 57 (riding bicycle around the trailer

park); Tr. 506 (noting that Plaintiff is "starting to do more biking now that the

weather is better"); *see also* Tr. 66, 476-77 (routinely takes dog to park); Tr. 476

(Plaintiff does his own laundry, cooks, sweeps, mops, and vacuums.).  However,

given that the ALJ identified only one activity (bicycling) as inconsistent with

Plaintiff's disability claims and Plaintiff does not bicycle on a daily basis, the

Court concludes this is an insufficient reason to find that Plaintiff's physical

activities were inconsistent with his physical-symptom claims.  However, this error

is harmless as the ALJ listed additional reasons, supported by substantial evidence,

to discredit Plaintiff's symptom claims.  *See Carmickle*, 533 F.3d at 1162-63;

*Molina*, 674 F.3d at 1115.

     *4.  Failure to Follow Medical Advice*

     Finally, the ALJ discounted Plaintiff's symptom claims because he

knowingly engaged in conduct harmful to his health and contrary to medical

advice.  Unexplained, or inadequately explained, failure to seek treatment or

follow a prescribed course of treatment may be the basis for an adverse credibility

finding unless there is a showing of a good reason for the failure.  *Orn*, 495 F.3d at

638.  Here, the ALJ discounted Plaintiff's symptom claims because he continues to

smoke approximately one-half to one pack of cigarettes daily even though he has a

known cardiac condition.  Tr. 27 (citing Tr. 507 (March 18, 2015: one pack a day);

Tr. 495 (September 3, 2015: one-half pack a day)); *see also* Tr. 293-94 (August 10,

2010: physician encouraged Plaintiff to quit smoking in order to have surgery for

his cervical spinal stenosis).  The ALJ's decision to discount Plaintiff's symptom

claims for failure to follow medical advice is a clear and convincing and

unchallenged reason supported by substantial evidence.

**REMEDY**

As discussed above, Plaintiff urges the Court to remand for an immediate award of benefits. *See* ECF No. 17 at 9-10. Because the record has not been fully developed in regard to Plaintiff's mental-health limitations, further administrative proceedings are needed. *See Garrison*, 759 F.3d at 1019-20; *Varney*, 859 F.2d at 1399. On remand, the ALJ shall reconsider the medical opinion evidence and record as a whole and conduct a new sequential evaluation.

**CONCLUSION**

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is neither supported by substantial evidence nor free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 17**, is **GRANTED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 22**, is **DENIED**.

3. The Clerk's Office is to enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for further proceedings consistent with this recommendation pursuant to sentence four of 42 U.S.C. § 405(g).

4.  Plaintiff may file an application for attorney fees by separate motion.

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED September 30, 2018.

_s/Mary K. Dimke_
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 32